UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMARIO A. MITCHELL,
          Petitioner,

v.                                            Case NO. 04-73559
                                            Honorable Patrick J. Duggan

JERI-ANN SHERRY,
          Respondent.
_____/

**OPINION AND ORDER DENYING HABEAS CORPUS PETITION**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan on February 9, 2006.
PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Petitioner Jamario A. Mitchell ("Petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his state convictions on three grounds. Respondent Jerry-Ann Sherry argues in an answer to the habeas petition that Petitioner's first claim lacks merit and that his remaining two claims are not cognizable on habeas review. For the reasons set forth below, the Court concludes that Petitioner is not entitled to habeas relief. Accordingly, the habeas petition will be denied.

**I. Background**

Petitioner was tried jointly, but before separate juries, with co-defendant Aljarrau Akins ("Akins") in Wayne County Circuit Court. On December 10, 2001, both defendants were convicted of the following offenses: (1) first-degree felony murder, in violation of MICH. COMP. LAWS § 750.316; (2) assault with intent to rob while armed, in violation of MICH. COMP. LAWS § 750.89; and (3) possession of a firearm during the commission of a felony, in violation of MICH. COMP. LAWS § 750.227b. The Michigan

Court of Appeals described the events leading to Petitioner's convictions as follows:

> This cases arises from the attempted robbery and the shooting death of Vito Davis. Defendants [Petitioner and Akins] and Osiris Cuesta were admittedly at the scene of the shooting. Defendants gave police conflicting statements relating to the events that led up to the shooting. However, Cuesta, who was the only eyewitness to the shooting to testify at trial, testified that on the day of the shooting, he, Akins, and Mitchell were together on Glenwood Street at about 2:00 a.m., when Antwan Banks approached Akins and had a private conversation with him. Akins then asked Cuesta and Mitchell if they wanted to help him rob someone who would shortly arrive at the home of Banks in a 2001 Cadillac. Cuesta and Mitchell agreed to help with the robbery.
>
> Cuesta, Akins, and Mitchell then went to Mitchell's house to retrieve a 9 millimeter automatic handgun, which Mitchell gave to Akins. The three men returned to Glenwood Street and waited on the porch of a nearby house for the target of the robbery to arrive. While waiting, Cuesta and Mitchell decided not to go along with the robbery, and the three men began walking away down the street. As they were walking away, a Cadillac drove up and stopped near the home of Banks. Without saying anything, Akins turned around and began walking toward the Cadillac. Cuesta followed, intending to go along with the robbery.[1] Akins walked up to the passenger side of the Cadillac, hit the butt of the gun against the car window, and fired one shot into the car. The driver of the Cadillac, Davis, sped away. Akins ran behind the car, pulling the trigger of the gun but no other bullets were discharged. Davis crashed into a parked van on a nearby street and died from excessive bleeding from a gunshot wound to his leg. After the shooting, Akins and Cuesta ran from the scene. Cuesta observed Mitchell, running in front of him toward the home of Akins.

---

[1]Cuesta was not sure whether Mitchell followed him.

> In the days following the shooting, defendants, Cuesta,[2] and Banks[3] were arrested. Both defendants gave statements to the police. Akins told the police that he acted as the lookout man for the robbery, but that Cuesta was the shooter. Mitchell, on the other hand, told the police that Akins was the shooter, but also that he (Mitchell) had supplied the gun used in the shooting and that he had expected to get paid for the use of his gun.

*People v. Mitchell*, 259 Mich. App. 545, 548-49, 675 N.W.2d 863, 869-70 (2003) (internal footnotes in original). At the trial, the prosecutor's theory was that Petitioner aided and abetted the crimes by providing the shooter with the gun. Petitioner's defense was that he abandoned the attempt to rob Vito Davis.

The trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of imprisonment of five to twenty-five years for the assault with intent to rob while armed conviction and life imprisonment for the murder. The trial court subsequently vacated Petitioner's conviction and sentence for assault with intent to rob while armed on double jeopardy grounds.

The Michigan Court of Appeals affirmed Petitioner's convictions in a published decision. *People v. Mitchell*, 259 Mich. App. 545, 675 N.W.2d 863 (2003). The Michigan Supreme Court denied Petitioner's application for leave to appeal on June 24,

---

[2] Cuesta was charged with felony murder and assault with intent to rob while armed. The prosecution agreed to dismiss the charge of felony murder against Cuesta if he agreed to plead guilty to a charge of assault with intent to rob while armed and testify at the trial of Akins and Mitchell.

[3] Banks was convicted by a jury of assault with intent to rob while armed. He was sentenced to fifteen to twenty-five years' imprisonment . . .

2004. *People v. Mitchell*, 470 Mich. 880, 682 N.W.2d 87 (2004). Petitioner signed and dated the pending habeas corpus petition on September 7, 2004, in which he raises the following grounds for relief:

> I. Conviction obtained by use of insufficient evidence;
>
> II. Petitioner's convictions were against the great weight of the evidence; and
>
> III. Petitioner's conviction of felony murder must be reduced to second-degree murder because the underlying felony, assault with intent to rob armed, is not one of the enumerated felonies within the statute.

## II. Standard of Review

Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under Section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S. Ct. at 1523. Avoiding these pitfalls "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002)(per curiam) (emphasis in original).

With this standard of review in mind, the Court will proceed to address Petitioner's claims.

### III. Discussion

#### A. Sufficiency of the Evidence

Petitioner alleges that the evidence adduced at trial was insufficient to support his convictions. According to Petitioner, the evidence showed that he abandoned the robbery scheme and walked away from the scene before the victim arrived. He claims that there was no proof of his participation in the assault or that he aided and abetted those who committed the assault.

"[T]he Due Process Clause protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). After *Winship*, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002)(citing *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979)). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16. "'[C]ircumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt.'" *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003)(quoting *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999)).

     The issue here is whether Petitioner aided and abetted others in committing the crimes for which he was convicted or whether he abandoned the robbery scheme. Pursuant to Michigan law, "one convicted as an aider and abettor is punished the same as the principal of the offense." *People v. Coomer*, 245 Mich. App. 206, 223, 627 N.W.2d 612, 622 (2001)(citing MICH. COMP. LAWS § 767.39). Aiding and abetting encompasses "all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which may support, encourage or incite the commission of a crime." *People v. Vicuna,* 141 Mich. App. 486, 495, 367 N.W.2d 887, 891 (1985). The Michigan

Courts have explained the concept of "abandonment" as follows:

> [V]oluntary abandonment is an affirmative defense to a prosecution for criminal attempt. The burden is on the defendant to establish by a preponderance of the evidence that he or she has voluntarily and completely abandoned his or her criminal purpose. Abandonment is not "voluntary" when the defendant fails to complete the attempted crime because of unanticipated difficulties, unexpected resistance, or circumstances which increase the probability of detention or apprehension. Nor is the abandonment "voluntary" when the defendant fails to consummate the attempted offense after deciding to postpone the criminal conduct until another time or to substitute another victim or another but similar objective.

*People v. Kimball*, 109 Mich. App. 273, 286-87, 311 N.W.2d 349, 350 (1981)(internal footnote omitted).

As the Michigan Court of Appeals explained in Petitioner's case, "'[t]he elements of assault with intent to rob are: (1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed.'" *Mitchell*, 259 Mich. App. at 554, 675 N.W.2d at 873 (quoting *People v. Cotton*, 191 Mich. App. 377, 391, 478 N.W.2d 681 (1991)). This is a specific-intent crime, therefore requiring evidence that the defendant intended to rob or steal. *Id*. "'The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.'" *Id*. (quoting *People v. Avant,* 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)). "Finally ... to convict a defendant of felony murder as an aider and abettor, the prosecution must prove '(1) the crime charged was committed by defendant or some other person, (2) defendant performed acts or gave encouragement that assisted the commission of the

crime, and (3) defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that he gave aid and encouragement.'" *Id.* at 554-55 (quoting *People v. Tanner*, 255 Mich. App. 369, 418-19, 660 N.W.2d 746 (2003)). With regard to the intent of the aider and abettor, the Michigan courts have explained that he or she must have the same intent required of a principal:

> "the prosecutor must show that the aider and abettor had the intent to commit not only the underlying felony, but also to kill or to cause great bodily harm, or had wantonly and wilfully disregarded the likelihood of the natural tendency of this behavior to cause death or great bodily harm."

*Id.*

The court of appeals summarized the evidence supporting Petitioner's convictions as follows:

> The evidence shows that Mitchell gave his gun to Akins, knowing that it would be used to commit the robbery. Mitchell admitted that he witnessed the crime and saw Akins shoot the victim. Mitchell also admitted that, notwithstanding his claim of abandonment, he expected to get paid for the use of his gun. Further, after the shooting, Mitchell expressed an intent to go back to the scene and retrieve the bullets that had fallen out of the gun.

*Id.* at 555, 675 N.W.2d at 873. The court of appeals determined from these facts that,

> . . . a jury could infer that Mitchell did not abandon his criminal purpose, but instead supplied the gun and watched the attempted robbery with the intent to assist in covering up the crime and the expectation that he would be paid for his role in the robbery. Further, it can be inferred that Mitchell knew that the gun he supplied to Akins might be used. Thus, it may fairly be inferred that Mitchell wantonly and willfully disregarded the likelihood of the natural tendency of this

8

        behavior to cause death or great bodily harm.

*Id.* at 555-56, 675 N.W.2d at 873.  The court of appeals therefore concluded that "[v]iewing the evidence in a light most favorable to the prosecution, a rational trier of fact could conclude that sufficient evidence existed to support [Petitioner's] convictions . . ." *Id.* at 556, 675 N.W.2d at 873-74.

      This Court finds the state court's determination reasonable and supported by the record.  The primary evidence against Petitioner came through his own statement to the police and through Osiris Cuesta's testimony.  In his statement to the police, Petitioner admitted that he was involved in the attempted robbery and fatal shooting of Vito Davis.  *See* Trial Tr. Vol. VIII at 17-20.  Petitioner also admitted that after Akins announced his intent to rob Davis, Petitioner, Akins, and Cuesta went to Petitioner's house and Petitioner gave his .9 millimeter automatic handgun to Akins.  *See id.* at 17.  Petitioner, Akins, and Cuesta then went to a house near Antwon Banks' residence and waited for Davis to arrive.  *See id.* at 18.  After waiting for ten to fifteen minutes, they decided to leave.  *See id.*  When they reached the middle of the block, Akins saw Davis' Cadillac and said, "there he is."  *See id.*  Petitioner and Cuesta responded that it was not him.  According to Petitioner, Akins "wouldn't leave it alone and went back down the street." *See id.*  Petitioner stated that they walked back toward Bank's house where Davis' Cadillac was parked.  *See id.*  Cuesta approached the vehicle and started talking to Davis, who was seated in the car.  *See id.*  When Akins also approached the car, Davis rolled up his window.  *See id.*  Akins then pulled out the gun, hit it against the window, and fired

9

one gunshot through the window. *See id.* Davis sped away. *See id.* at 19. Akins ran behind the vehicle continuing to pull the trigger, although Petitioner claimed that the gun wouldn't fire. *See id.* Petitioner ran away. *See id.* When he looked around, he saw Cuesta and Akins running behind him. *See id.*

The interrogating police officer asked Petitioner why he agreed to go along with Akin's idea to rob Davis. Petitioner responded that he thought "it was going to be a chance to get some easy money or whatever [Davis] had." *See id.* Petitioner claimed that he never meant for Davis to get hurt or killed. *See id.* However, when asked why he did not say, "I'm not going along with this," he told the police officer that he "just wanted to get paid for the use of [his] gun." *See id.* at 19-20.

Cuesta gave a similar account of the incident. He testified that he and Petitioner agreed to help Akins commit a robbery and that Petitioner gave Akins a .9 millimeter gun. *See id.* at 91-92. Cuesta claimed that while they waited for Davis to arrive, he and Petitioner decided not to go along with the plan because a gun was involved. *See id.* at 93-94. Cuesta admitted, however, that Petitioner did not try to retrieve the gun from Akins. *See id.* at 94. Cuesta testified that when Davis' car arrived, he and Akins began walking towards it. *See id.* at 95. Cuesta was not sure, however, whether Petitioner followed them. *See id.* at 96. He testified that Akins approached the passenger side of the vehicle and made a gesture to Davis suggesting that he wanted to buy or sell "weed." *See id.* at 98. Davis then began rolling his window down, but then rolled it back up. *See id.* at 99. Cuesta testified that he grabbed the door handle and Akins hit the butt of his

10

gun against the window. *See id*. Akins then fired a shot toward the window. *See id*. at 99-100. According to Cuesta, Davis took off with Akins running behind the car pulling the trigger of the gun. *See id*. at 100-01. Cuesta and Akins ran toward Akins' house, catching up to Petitioner who was running ahead of them. *See id*. at 102. Later, at Akins' home, Petitioner expressed anger at Akins for shooting Davis. *See id*. at 103. Petitioner also noted that bullets had fallen out of the gun. *See id*. at 104. Concerned that the bullets might have his fingerprints on them, Petitioner said that he was going to get them. *See id*. at 14-05. Cuesta did not know, however, whether Petitioner ever went back to look for any bullets. *See id*. at 105.

A rational trier of fact could have concluded, beyond a reasonable doubt, that Petitioner aided and abetted the crimes by providing the murder weapon, accompanying Akins and Cuesta, and indicating his intent to try and retrieve incriminating bullets. There was evidence that Petitioner and Cuesta decided not to pursue the robbery when Davis initially failed to appear; however, there was additional evidence that when Davis eventually arrived, Akins, Cuesta, *and Petitioner* turned around and began approaching his car. Petitioner described that portion of the incident by saying, "[W]e walked back down the street towards Antwon's house." *See id*. at 18 (emphasis added). This comment and Petitioner's description of what occurred when Akins and Cuesta approached Davis's car indicate that Petitioner joined Akins and Cuesta in the attempt to rob Davis and that he did not completely abandon the initial plan to rob Davis. Therefore, the state court's conclusion that the evidence was sufficient did not result in a decision

that was contrary to, or an unreasonable application of, clearly established federal law, and Petitioner has no right to habeas relief on the basis of his first claim.

### B. Great Weight of the Evidence

In his second claim, Petitioner alleges that his convictions were against the great weight of the evidence. The Michigan Court of Appeals adjudicated this claim along with Petitioner's sufficiency-of-the-evidence claim. *Mitchell*, 259 Mich. App. at 554 n.12, 675 N.W.2d at 872 n.12. The court of appeals stated that the same evidence which supported Petitioner's convictions also supported the trial court's decision to deny Petitioner's motion for a new trial based on the great weight of the evidence. *See id.* at 556 n.13, 675 N.W.2d at 874 n.13.  The court of appeals determined that the "verdict was not against the great weight of the evidence and, thus, the trial court did not abuse its discretion by denying [Petitioner's] motion for a new trial on this basis." *Id.*

This Court agrees with the approach taken by the state court. Petitioner's great-weight-of-the-evidence claim is subsumed by his sufficiency-of-the-evidence claim. Therefore, for the reasons set forth previously, the Court finds that Petitioner is not entitled to habeas relief based on this claim.

### C. The Underlying Felony

In his third and final claim, Petitioner alleges that his felony murder conviction must be reduced to second-degree murder because the underlying felony– assault with intent to rob while armed– is not one of the enumerated felonies in Michigan's felony murder statute. The felony murder statute reads in relevant part:

> (1) A person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life:
>
> . . .
>
> (b) Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, kidnapping, or vulnerable adult abuse in the first and second degree under section 145n.

MICH. COMP. LAWS 750.316(1)(b).

Although the statute does not list assault with intent to rob as a predicate felony for felony murder, the Michigan Court of Appeals held as a matter of first impression in Petitioner's case that assault with intent to rob while armed is a proper underlying felony to support a felony murder conviction. *Mitchell*, 259 Mich. App. at 552, 675 N.W.2d at 872. As the court of appeals reasoned:

> The felony-murder statute [includes] "[m]urder committed in the perpetration of, or attempt to perpetrate . . . robbery" . . . There is no dispute that armed robbery falls within the meaning of the term 'robbery' in the felony-murder statute. Because an attempt to commit an enumerated offense constitutes a predicate felony under the felony-murder statute, attempted armed robbery also constitutes a predicate felony ... assault with intent to rob while armed is a necessarily lesser included offense of armed robbery . . . and attempted armed robbery is a lesser included offense of assault with intent to rob while armed . . . Thus, attempted robbery is established every time assault with intent to rob while armed is established.

*Id*. at 552-553, 675 N.W.2d at 871-72 (internal citations omitted)

13

"[S]tate courts are the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886 (1975). As the Supreme Court recently stated, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, — U.S. — , 126 S. Ct. 602, 604 (2005)(citing *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475 (1991) and *Mullaney*, 421 U.S. at 691, 95 S. Ct. 1881). "[I]t is for the Michigan court to say what Michigan law is . . . ." *Duffy v. Foltz*, 804 F.2d 50, 54 (6th Cir. 1986). Accordingly, the Court concludes that Petitioner's third claim lacks merit and does not entitle him to a writ of habeas corpus.

### IV. Conclusion

For the reasons set forth above, Petitioner's claims lack merit or are not cognizable on habeas review. Accordingly,

**IT IS ORDERED** that Petitioner's application for a writ of habeas corpus is **DENIED**.

                                         s/PATRICK J. DUGGAN
                         UNITED STATES DISTRICT COURT JUDGE

Copies to:
Jamario A. Mitchell
#386239
Macomb Correctional Facility
34625 26 Mile Road
New Haven, MI 48048

Debra Gagliardi, Assistant Attorney General